NEW YORK,
Jan. 1823.

The People
*vs.*
N. R. Philips.

The People
*vs.*
Eseck Wardle

---

The People *vs.* Nathaniel R. Philips. *Assault and Battery.*

The People *vs.* Eseck Wardle.    *Assault and Battery.*

The defendant in the above cases were put upon their
trial, charged with committing an assault and battery up-
on John Jasper Defloor, on the 9th of December, 1822.

NEW YORK, Jan. 1823.

The People vs. N. R. Philips,

The People vs. Eseck Wardle

The authority of a master over his apprentice is personal, he cannot delegate power to his journeyman to chastise him.

It appeared, by the testimony of the prosecutor, that he was the apprentice of Mr. Philips, and that Wardle was foreman of the shop: that on the 14th of August Wardle came into the shop after dinner, and said some of the boys in the shop had stolen his tobacco out of his chest, and that they were a set of thieves, &c. : that the prosecutor asked him who was a thief. Wardle answered that he was a thief, the prosecutor then replied that *he* was a thief. That Wardle then came up, and caught him by the hair of his head, and struck him several times ; the prosecutor then caught up a chisel, and threatened to protect himself, but he was induced to lay it down by the command of Wardle, who threw him over the wash-stand.

The prosecutor further testified, that Philips, his master, came in shortly after, and on the same day told him he must prepare himself for a flogging: that. Philips, in company with Wardle, took him into the cellar, and there attempted to chastise him, but meeting with some resistance, he told Wardle to get a rope to tie him ; he procured a bed cord, and his hands were tied behind his back. In this state he received such chastisement as his master thought proper to give him. He was so severely beaten as to leave the marks upon him for several days: his arms and hands were much cut, and his thighs and legs were considerably larcerated ; his wrists, around which were bound the cords to tie him, were considerably inflamed. Upon these facts being made out, *Maxwell*, *Wilkins* and *Zunts*, counsel for the people, rested the case.

*Price* and *D. Graham*, counsel for both defendants, asked the prosecutor his name, he answered it was John Jasper Delfon, when it appeared in the indictment to be Defloor, an objection was then taken by *Price*, to the variance in the evidence, from the name set forth in the

indictment : alleging it was such a variance as could be considered fatal by the Court: and cited the case of Byrne, who was indicted by the name of Byne ; an objection was taken to the indictment, on account of the variance, and it was held fatal by the Court, and that the defendants, if found guilty, or were acquitted on this indictment, might be again indicted by the prosecutor on his true name.

NEW YORK, Jan. 1823.

The People vs. N. R. Philips.

The People vs. Eseck Wardle

*Maxwell* replied at some length, and contended that where there was sufficient to designate the name, it was sufficient, that it was uncertain which way the name was pronounced.

The Court held it a fatal variance from the indictment, but ordered the defendants to find sureties each in the sum of $500 for their appearance from day to day, to answer to a new indictment to be preferred against them.

*Price* then observed that he would prefer to wave the objection, and go on to trial, than to comply with the conditions prescribed by the Court. The Court ordered the trial to proceed.

The defendants offered testimony to prove that the prosecutor was impertinent and saucy to his master and foreman : that he had refused to obey Wardle as foreman of the shop ; that he had threatened to cut or stab him with a chisel : that when Mr. Philips came into the shop shortly after the scuffle with Wardle, the prosecutor was cursing and swearing, and conducting himself in the most violent and outrageous manner, brandishing a stick, and threatening Wardle. That he was dishonest, his master having detected him in working up some trifling stuff, to make a box, without his consent, and that he was a young man of a vicious disposition : that he had chastised him with a small riding whip, which was now exhibited to the Court; and that it was impossible, from the nature of the

NEW-YORK, instrument used, that the chastisement could have been
Jan. 1823. cruel and excessive : and that he was a kind master to his
The People apprentices, &c.
vs.
N. R. Philips     The counsel for the people then examined witnesses,
who proved that the prosecutor was a young man of a
The People peaceable disposition and of good morals, and rested.
vs.
Eseck Wardle     The case was summed up by *D. Graham* for the de-
fendants, and by *Wilkins* for the people.

It was contended for the defendants, that by the evidence
it appeared that the prosecutor was of unruly and ungov-
ernable passions : that the important relation of master
and apprentice would be sensibly affected by a convic-
tion : that the policy of the community and the good of
the individuals required that protection of the master that
would ensure his safety from such attempts on the part of
the apprentice : that the weapon used on this occasion was
a proper one, being a small riding whip, and that its case
was not disproportioned to the offence committed.

It was replied on the part of the people, that so far
from there being an offence to warrant such a chastise-
ment, there was no offence at all, or if any, a very venal
one ; that the rights of the apprentice were as important
and sacred as those of the master ; that apprentices were
not slaves, to be treated according to the capricious feel-
ings and angry passions of their masters, but ought to be
respected and treated with the same tenderness as a parent
would treat his child.     That it appeared clearly, by the
evidence, the chastisement was immoderate : that even ad-
mitting the disposition of the apprentice was bad, and his
passions turbulent, no occasion could excuse such unmer-
ciful beating : that the instrument used, was by no means
a proper one, and that whatever might be the rights of
the master, it was certain he could not delegate them to
his foreman, &c.

The Court explained the law to the jury, to be the
same between the master and the apprentice as between
the parent and child, that the master had a legal right to
chastise his apprentice on a proper occasion and in a prop-
er manner, but he must take care that the chastisement
be not immoderate, and that it is for a lawful cause; ob-
serving that the necessities of society compelled a consid-
erable portion of the community to put out their children
to learn some useful trade for their support; that it was a
delicate relation, and was treated with care and circum-
spection by the law, that no advantage might be taken of
tender years and inexperience; that the father who parted
with the custody of his child, never supposed that he
granted the master a power (which he had not) to abuse
him.

The court further observed, that the authority of the
master over the apprentice, was strictly personal; that he
had no right to direct or permit his foreman to chastise
him for any offence whatever: that in this case it appear-
ed that Wardle struck the prosecutor in the first part of the
affray, and tied him for the master to whip, in the last.—
This was unjustifiable, it was an assumption of right the
master could not give. After a statement of these princi-
ples of law, his Honor the Recorder left it to the jury to
say, upon the facts, whether the weapon used was a prop-
er one, whether the occasion was such a one as called for
its use, and whether the chastisement was not immod-
erate.

The jury retired, and in a few minutes brought in a
verdict of guilty against each of the defendants.